Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| **BARBARA SILVA**, individually, and on behalf of all others similarly situated, §§§§§ | Civil Action No.:  3:25-cv-308 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **BETTER TAX RELIEF LLC**, a California Limited Liability Company | |
| Defendant, | |

Plaintiff  BARBARA SILVA, individually and on behalf of all others similarly situated,

brings this Class Action Complaint against Defendant BETTER TAX RELIEF, LLC (hereinafter

"BTR or Defendant") to stop its illegal practice of sending unsolicited telemarketing calls to the

telephones of consumers whose phone numbers were registered on the Federal National Do Not

Call Registry (hereinafter "NDNCR"), and to obtain redress for all persons injured by their

conduct. Because telemarketing campaigns generally place calls to thousands or even millions of

potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class

of other persons who received illegal telemarketing calls from and/or on behalf of Defendant BTR.

Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and

1

experiences, and, as to all other matters, upon information and belief, including an investigation conducted by her attorney.

## NATURE OF THE ACTION

1.      As a part of its marketing, Defendant sent thousands of unsolicited calls to consumers whose phone numbers were registered on the NDNCR.

2.      Defendant did not obtain consent prior to sending these unsolicited calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.      Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4.      The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5.      The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6.      By sending these unsolicited calls to people who have registered their phone numbers on the NDNCR, Defendant violated the privacy and statutory rights of Plaintiff and the Class.

7.      Plaintiff therefore seeks an injunction requiring Defendant to stop its unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8.      Plaintiff Barbara Silva is a natural person residing in El Paso, Texas.

9.      Defendant is a limited liability company organized and existing under the laws of California and can be served via its registered agent Nima Asadi, ESQ. at 19200 Von Karman Ave, Suite 600, Irvine, California 92612.

## JURISDICTION AND VENUE

10.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

11.     This Court has specific personal jurisdiction over Defendant because Defendant caused the violating calls to be sent to Plaintiff in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

13.     Defendant offers tax relief services to consumers nationwide.

14.     Defendant placed unsolicited phone calls using an artificial or prerecorded voice soliciting Plaintiff and the putative class for tax relief services.

15.     Defendant failed to obtain consent from recipients, nor did they scrub their calling list against the NDNCR.

## PLAINTIFF'S FACTUAL ALLEGATIONS

16.     Plaintiff's telephone number ending in -7352 is a residential number and is registered to a cellular telephone service.

17.     Plaintiff's telephone number ending in -7352 is used for personal purposes and is not associated with business.

18.     Plaintiff successfully registered her telephone number ending in -7352 on the NDNCR since May 11, 2019, which was more than 31 days prior to receiving the alleged calls in this complaint.

3

19.    According to its website https://bettertaxrelief.com Defendant offers tax relief services to consumers nationwide.

20.    As part of its marketing, and to generate new customers, Defendant developed a telemarketing campaign to send ringless voicemails en masse to thousands of consumers telephone numbers.

21.    Defendant's telemarketing campaign employs the use of an artificial or prerecorded voice.

22.    A ringless voicemail is a technology that allows users to send a voicemail message to a recipient's voicemail without ringing their phone.

23.    On November 21, 2022, the Federal Communications Commission ("FCC") ruled that ringless voicemails are subject to the TCPA and require consumer consent.

24.    The FCC found that ringless voicemails are "calls" made using an artificial or prerecorded voice.

25.    Upon information and belief, Defendant fails to scrub its calling list against the NDNCR as required by the FTC.

26.    As per the FTC and FCC, for profit sellers who make outbound calls to sell goods and services (either directly or through their agents) to residential telephone numbers are required to subscribe to the NDNCR database and pay a fee for each area code they plan to call.

27.    As per the FTC and FCC, for profit sellers who make outbound calls to sell goods and services (either directly or through their agents) to residential telephone numbers are required to download the NDNCR list and remove such telephone numbers from their calling lists and update their calling lists every thirty-one days.

28.    Upon information and belief, based on Defendant's Better Business Bureau page, Defendant's telemarketing campaign has reached hundreds if not thousands of consumers' residential telephones.



29.     Upon information and belief, Defendant has a history of conducting illegal telemarketing.

30.     Defendant has been sued at least once prior to this complaint for both TCPA and Texas Bus. & Com. Code 302.101 violations, *Pinn v. Better Tax Relief LLC*, No. 4:24-cv-00488-P (N.D.TX., May 27, 2024).

31.      Defendant was on full notice that employing the use of an artificial or prerecorded voice as part of their telemarketing campaign without the consent of the called party is a violation of the TCPA.

32.     Defendant was on full notice that they must obtain registration and bond on file with the Texas Secretary of State to make telephone solicitation calls into Texas.

33.    According to the Texas Solicitor Registration Database, Defendant still does not possess the necessary requirements to make telephone solicitations into Texas. https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

34.    Defendant does not qualify for an exemption under § 302.053.

35.    Despite Plaintiff's telephone number ending in -7352 being registered to the NDNCR, Defendant's telemarketing campaign reached Plaintiff's number ending in -7352 at least eleven (11) times during the months of April and July 2025 (hereinafter "the calls").

36.    The calls Plaintiff received from Defendant were all ringless voicemails.

37.    On April 11, 15, and 16 of 2025, Plaintiff received the following ringless voicemail from Defendant that stated:

> Hello, this is Samantha from the tax relief department regarding your unresolved tax matter. Based on our records, you may qualify for the new IRS liability reduction program created by the new administration to help families and business owners reduce or even eliminate their tax debt. Press 1 now to speak with a tax resolution officer learn more about the program and begin enrollment so you can get back on your feet and be tax free again this could save you thousands or call us back at 279-242-5425.

38.    On April 21, 24, and 26 of 2025, Plaintiff received the following ringless voicemail from Defendant that stated:

> Hello, this is Mark from the tax reduction department regarding your tax matter. As you may know, April 15th was the IRS tax deadline. Based on our records, you may qualify for the new IRS liability reduction program created by the current administration to help families and business owners reduce or even eliminate their tax debt. Press 1 now to speak with a tax resolution officer, check your eligibility and begin enrollment. We can help you get caught up, avoid penalties and potentially save you thousands or call us back at 279-242-5425.

39.    The calls Plaintiff received from Defendant all prompted Plaintiff to call back phone number 279-242-5425.

40.    Neither of the calls Plaintiff received from Defendant properly identify the caller.

41.    On April 29, 2025, Plaintiff called phone number 279-242-5425 as instructed in the ringless voicemails Plaintiff received from Defendant as it was the only way to identify who was behind the calls.

42.    Plaintiff was connected to an agent with Defendant named Karla Cruz (hereinafter "Cruz").

43.    In order to qualify Plaintiff for Defendant's tax relief services, Cruz asked Plaintiff a series of questions regarding Plaintiff's tax debt, monthly expenses, and monthly income.

44.    Cruz advised Plaintiff that she received confirmation to take Plaintiff on as a client.

45.    Cruz then solicited Plaintiff for tax relief services on behalf of Defendant.

46.    Cruz advised Plaintiff the fee to get started would be $495 to conduct a tax investigation with the IRS.

47.    While on the call with Cruz, Plaintiff received an email from Cruz that included a Tax Investigation Service Agreement from Defendant for Plaintiff to sign.



48.    The email Plaintiff received from Cruz identified and confirmed Defendant being connected to the alleged calls.

49.     Upon identifying Defendant being connected to the alleged calls, on the same day, April 29, 2025, Plaintiff emailed Cruz advising Cruz that Plaintiff was not interested and to remove her telephone number ending in -7352 from Defendant's calling list.

**Barbara Silva** <epeliteconstruction915@gmail.com>                      Tue, Apr 29, 2025 at 2:30 PM
To: kcruz@bettertaxrelief.com

I change my mind thank you for the information but I'm no longer interested. Can you please remove my number 915-472-7352 from your calling list list. Thank you.

50.     Despite Plaintiff's request to add her number ending in -7352 to Defendant's Do Not Call list, Plaintiff received at least five (5) additional ringless voicemails from Defendant on July 22, 23, 25, 29 and August 5, 2025.

51.     The ringless voicemails do not identify Defendant.

52.     The ringless voicemails all left the same call back number 877-580-4884 prompting Plaintiff to call back.

53.     The ringless voicemails previously were soliciting tax relief services.

54.     On August 8, 2025, Plaintiff called phone number 877-580-4884, the call back number left in the ringless voicemails.

55.     Plaintiff was connected to an agent "Reyes" with Defendant.

56.     Reyes again solicited Plaintiff for tax relief services on behalf of Defendant.

57.     Plaintiff received an email from Reyes that contained the same contract Plaintiff previously received from Cruz.

8



**Tax Investigation Service Agreement**

This agreement is entered into on 8/8/2025 ; I (we) **Barbara T Silva** ("known as the client) hereby retain the services of Better Tax Relief to represent me (us) individually and collectively. Better Tax Relief agrees to represent the client in consideration of the client's payment of the required fees set forth and demonstrated in section IV of this agreement. The term of this agreement is 365 days from the date of this agreement, or until service (s) (see section 2 for scope of representation services) are completed.

Section 1. Client(s) General Information



58.     Plaintiff never provided her prior express written consent to receive any of the alleged calls.

59.     The calls were nonconsensual encounters that were not made for emergency purposes.

60.     The calls were made to Plaintiff for the purpose of encouraging tax relief services on behalf of Defendant.

61.     Upon information and belief, the calls were placed while knowingly ignoring the NDNCR.

62.     Upon information and belief, the calls were placed without Defendant training its agents on the use of an internal do-not-call policy.

63.     Plaintiff was harmed by the calls.

64.      Plaintiff was temporarily deprived of legitimate use of her phone because her privacy was improperly invaded. Moreover, the calls injured Plaintiff because they caused frustration, annoyance, were a nuisance, and disturbed the solitude of Plaintiff.

9

65.    The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

## CLASS ALLEGATIONS

66.    **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendant called (3) phone numbers registered on the National Do Not Call registry for more than 30 days.

> **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant called (3) phone numbers that registered on the National Do Not Call registry for more than 30 days.

> **Texas Registration Class**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant called.

67.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

68.    **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendant sent unsolicited calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

69.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of the Defendant's uniform wrongful conduct and unsolicited calls.

70.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

71.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. The Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on the Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

72.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

  a.  Whether the unsolicited calls were caused by the Defendant;

  b.  Whether the unsolicited calls promoted the Defendant's products or services;

  c.  Whether the Defendant checked the phone numbers to be called against the National Do Not Call Registry;

11

d.  Whether the Defendant obtained prior written express consent;

e.  Whether Defendant obtained a Texas telemarketing registration certificate;

f.  Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of the Defendant's conduct.

73.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from the Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION:
### Violation of 47 U.S.C. § 227(b)
### Artificial or Prerecorded Voice
### (On behalf of Plaintiff and the TCPA Class)

74.     Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

75.     Defendant and/or its agents or affiliates placed unsolicited phone calls to Plaintiff and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

76.     The calls were made for the express purpose of soliciting consumers for Defendant's goods and services.

77.     When Plaintiff and the Class answered and/or played their voicemails, the calls played an artificial or prerecorded voice to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

78.     As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendant to stop its illegal calling campaign.

79.     Defendant and/or its agents or affiliates made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

80.     If the court finds Defendant willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code § 305.053
### (On behalf of Plaintiff and the Texas Subclass)

81.     Plaintiff incorporates the foregoing allegations as if set forth herein.

82.     The foregoing acts and omissions of Defendants telemarketer and/or agents constitute multiple violations of the Texas Business and Commerce Code § 305.053, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without prior express written consent in violation of 47 U.S.C. § 227 et seq.

83.     Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

84.     Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation pursuant to Texas Business and Commerce Code § 305.053(c).

**THIRD CAUSE OF ACTION:**
**Violations of The Texas Bus. & Com. Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Registration Class)**

85.     Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

86.     Defendant and/or its agents, or affiliates sent illegal solicitation sales calls to Plaintiff and the putative class without having a valid telephone solicitation as required under Tex. Bus. & Com. Code § 302.101.

87.     Upon information and belief, the actions of Defendant also violated Texas Bus. & Com. Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

88.     A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

89.     Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

90.     As a result of Defendant's violations of the Texas Bus. & Com. Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Bus. & Com. Code § 302.302(a).

91.     As a result of Defendant's violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BARBARA SILVA, individually and on behalf of the Class, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff as the Class

representative and appointing her counsel as Class Counsel;

14

B.      An order declaring that Defendant's actions, as set out above, violate § 227(b) of

the TCPA;

C.      An order declaring that Defendant's actions, as set out above, violate §§ 302.101,

305.053 of the Texas Bus. & Com. code;

D.      An order declaring that the Defendant's actions, as set out above, violate the TCPA

willfully and knowingly;

E.      An order declaring that the Defendant's actions, as set out above, violate the Texas

Bus. & Com. code willfully and knowingly;

F.      An award of $5,000 in statutory damages arising from the Texas Bus. & Com. Code

§ 302.101 for each intentional violation;

G.      An injunction requiring Defendant to cease sending all unlawful calls;

H.      An award of reasonable attorneys' fees and costs; and

I.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: August 12, 2025,          Respectfully submitted,


By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*

15

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, the foregoing was filed through the Court's

electronic filing system.


Date: <u>August 22, 2025</u>

/s/ Mark L. Javitch
Mark L. Javitch
